140 So.2d 417 (1962)
Alvin R. OLDHAM
v.
Mrs. Lillian HOOVER et al.
No. 5525.
Court of Appeal of Louisiana, First Circuit.
April 9, 1962.
Certiorari Denied June 20, 1962.
Rehearing Denied May 16, 1962.
*418 Joel B. Dickinson, Baton Rouge, for appellant.
Seale, Hayes, Smith, Keogh & Franklin, by Joseph F. Keogh, Baton Rouge, for appellees.
Before LOTTINGER, LANDRY and REID, JJ.
REID, Judge.
This is a suit for damages brought by Alvin R. Oldham, individually and on behalf of his minor son, Randy Oldham, against defendants, Mrs. Lillian Hoover, Mrs. Lillian Watts, Mrs. Marvin Ward Donahue, and Mrs. Jessie Lee Forrest doing business *419 as Lakeside Day Nursery, and their liability insurer, American Insurance Company, for the sum of $17,239.90 for personal injuries received by plaintiff's son, Randy Oldham, age 4, sustained when the child tripped and fell over a piece of playground equipment known as a "rockaway", said accident having occurred December 14, 1959.

MOTION TO DISMISS
Subsequent to the appeal in this case the defendants filed a motion to dismiss the appeal on the grounds that the plaintiff was not entitled to the benefit of proceeding under the pauper's act because the plaintiff and his child were residents and citizens of Albuquerque, New Mexico, subsequent to the filing of the original suit and during trial thereof. The supplemental and amended petition and the order authorizing the prosecution of this suit without the necessity of payment of costs and furnishing bond was filed on February 17, 1961. At this time, according to the allegations of said petition and the verifying affidavit, the plaintiff was a citizen of and domiciled in the State of Louisiana.
Under our law the facts which are the basis for the issuance of an order permitting the prosecution of a suit in forma pauperis are taken as true until the court has an opportunity to reexamine them upon the trial of a rule to traverse. When a judge enters an order permitting a litigant to litigate in forma pauperis, allegation of extreme poverty contained in the application must be taken as true in the absence of a rule to traverse. Singleton v. First National Life Insurance Company, La.App., 157 So. 620.
The defendants did not file a motion to traverse nor have they filed a motion to remand this case to the lower court to permit the filing of a rule to traverse the affidavit of poverty.
Our courts have held that where a devolutive appeal is taken in forma pauperis without allowing the appellee sufficient time in which to traverse the affidavits of poverty, the appellate court may, upon timely application therefor, remand the cause to give the appellee the opportunity to do so. See Brewer v. Theole, 186 La. 168, 171 So. 839; Buckley v. Thibodaux, 181 La. 416, 159 So. 603.
The appellant should have filed a motion to remand this case for the purpose of traversing the affidavits and order permitting the prosecution of this case in forma pauperis. Having failed to do so, he is deemed to have waived his right. It is, therefore, ordered that the motion to dismiss be overruled.

ON THE MERITS
Paragraph 10 of plaintiff's petition attributes to defendants the following acts of negligence, to-wit:
1. In not having proper supervision on the playground.
2. In neglecting to watch over the children placed in the day nursery's care, and in permitting them to play or come in contact with dangerous instrumentalities.
3. In neglecting to care for the children placed in the Day Nursery and in permitting them to run and play at will, particularly in permitting them to play with older children who ran over and caused the smaller children to be hurt.
The above named defendants filed an answer which amounts to a general denial but which admitted the operation of a day nursery as alleged by plaintiff and further admitting that they were insured under a policy issued by defendant, American Insurance Company, and designated as a "Owners, Landlords and Tenants Liability" policy.
In addition to pleading a general denial, defendant American Insurance Company interposed the further defense of lack of coverage predicated on the contention the policy issued covered the operation of a day nursery situated at 3324 Morning Glory Street, Baton Rouge, Louisiana, whereas the *420 insureds thereunder conducted the nursery at a different address, namely, 1958 Christian Street, Baton Rouge.
After trial on the merits, the learned trial court rendered judgment in favor of the defendants rejecting plaintiff's demand at plaintiff's costs. In essence the judgment of the trial court was based on the finding that plaintiff had failed to show any negligence whatsoever on the part of defendants. From the judgment dismissing his demands plaintiff has taken this appeal.
The record shows that Mr. and Mrs. Alvin R. Oldham, parents of the child, Randy Oldham, were both employed at the time of the accident. To provide supervision of her young child during her hours of employment, Mrs. Oldham placed her son, Randy, in the custody of Mrs. Hoover, who operated a nursery under the name of Lakeside Day Nursery. The child was left at the nursery at approximately 7:30 each morning where he remained until approximately 5:30 in the afternoon. For such services Mrs. Oldham paid Mrs. Hoover the sum of $10.00 weekly.
On the day of the accident, Randy, while playing with another child on a device known as a "rockaway" was injured when he slipped and struck his nose on some portion of said instrument. According to the record a "rockaway" is a piece of mobile playground equipment expressly and specifically designed for use by children of nursery school age.
From the evidence it appears that a "rockaway" is constructed of light weight metal tubing which is formed into two runners or rockers approximately 6 to 8 feet in total length. These "rockers" are bent into an arc form with both ends of each runner or rocker being shaped and slanted upward to a height of approximately 15 inches. The two rockers or runners thus produced are then bound together on each end by similar metal tubing thus producing a frame approximately 18 inches wide. To this frame is then added two parallel, horizontal lengths of tubing, one to each side, in the nature of the arms of a stretcher which are attached to each end of the rockers at a point approximately 1 foot below the end crosspieces which hold the rockers together. Three wooden seats in the nature of crosspieces are then affixed, two on either end and near the point where the horizontal crossbars attach to the rockers or runners and one in the center thus producing three seats upon which the children may sit. Adjacent to the center seat is added a handrail constructed of tubing identical to that used in the rest of the frame of the device.
While in the act of attempting to move the rockaway, Randy slipped and struck his nose on either one of the seats or the tubular framing of the rockaway.
Regarding plaintiff's allegation of lack of proper supervision, the testimony shows that twenty-five children were enrolled in the school, twenty-three of whom were in attendance on the day of the accident. It further appears that the regulations of the State Department of Public Welfare (which must be observed by operators of day nurseries) require the presence of one attendant for each twelve to fifteen children. On the day in question it is uncontroverted that for the twenty-three children present, two supervisors were present in the yard, namely, Mrs. Hoover, who had charge of the four to five year old group, and Mrs. Donahue, who was attending to those children age two and three years. It would appear, therefore, that under such circumstances, defendant was furnishing and maintaining adequate supervision.
Mrs. Hoover, who was present when the accident occurred testified that she was standing approximately eight feet away and observed Randy and another child attempting to move the rockaway. As she had seen this procedure repeated numerous times without incident, she thought nothing of the child's activity in this regard. In some manner Randy's leg became entagled in the frame of the rockaway causing him to fall forward and strike his nose on the frame of *421 the instrument. Immediately the child's nose began to bleed whereupon Mrs. Hoover brought the child inside, applied cold compresses to his nose until the bleeding stopped and kept the child quiet and inactive. The accident occurred in the morning of the day in question and on several occasions Mrs. Hoover examined the child's nose and inquired whether or not he was in pain. At approximately 3:00 o'clock that afternoon, thinking the child had fully recovered, she permitted him to return to play.
In its reasons for judgment the trial court specifically absolved defendants from any act of negligence whatsoever finding that while it is foreseeable that young children may trip or fall during play, it was not foreseeable that moving such a light piece of equipment (expressly designed for the use of small children) would cause a child to either trip or fall and injure himself thereon.
In addition, the trial court held that an operator of a day nursery for children of such tender years, although held to the highest degree of care toward its charges, is nevertheless not the insurer of children whose supervision it undertakes.
The errors complained of by appellant are stated in appellant's brief as follows:
"1. The Trial Court erred in holding that since the possibility of these children tripping over this playground equipment was very remote the day nursery was not liable for the injuries sustained by plaintiff's son, Randy.
"2. The Trial Court erred in holding that the defendant was not liable for this accident as it was not reasonably foreseeable that the children would hurt themselves while moving the playground equipment from place to place in the yard, particularly in view of the fact that all of these children were of tender age, ranging from three years to five years and the day nursery owners were being paid to care for these infants and were, in effect, insurers of their safety.
"3. The Trial Court erred in holding that the case of Bergeron v. Houston American Insurance Company, 98 So.2d 723, decided by this Court, was not in point with this case, in view of Your Honors holding in that case that the defendant was liable, although he was not charged with the duty of protecting and caring for the child or children, as they were merely guests under the law, charged with the duty of protecting said infant and seeing that he came to no harm, were present and could have also protected him."
Appellant's first complaint is that defendant failed to properly supervise the children entrusted to defendant's care. This indictment is not substantiated by the evidence of record for the evidence shows beyond any question that not only did defendant have the required number of supervisors or attendants present but also that the attendants were present on the grounds at the time that the accident occurred. It is only reasonable and natural that children during the course of play will fall or accidentally strike or bump into each other or some object. While supervisors of a day nursery are charged with the highest degree of care toward the children placed in their custody, they are nevertheless not the absolute insurers of their safety and cannot be expected or required to prevent children from falling or striking each other during the course of normal childhood play.
Next plaintiff contends in substance that defendants negligently permitted the children to come into contact with dangerous instrumentalities. The record in this case is barren of even the slightest proof that the rockaway upon which young Randy Oldham struck his nose was a dangerous instrumentality. It is undisputed in the record that all of the playground equipment present in the nursery operated by defendants had been inspected and approved by the State Department of Public Welfare. More specifically, it appears that the rockaway is designed solely for the use of children *422 in the two to five year age group. It is shown to be light, easily mobile and is constantly moved around by the children themselves as their whims and desires dictate. According to the uncontradicted testimony of defendants, the rockaway is moved many times each day by the children without incident or accident. As properly found by the learned trial court, the rockaway was not inherently dangerousit contains no jagged or pointed ends upon which a child might injure himself. On the contrary, pictures introduced in evidence show that all corners of the tubing are gently curved no doubt expressly so to guard against injury to children.
The final charge of negligence attributed to defendants is the reputed failure to care for the children by permitting them to run and play at will and particularly in permitting the age groups to mix so that the older children inflict bodily injury upon the younger age group. This allegation is also without proof in the record of this case. While the testimony of defendants show that it is quite common for the children to fall and bump into each othersuch incidents are of such everyday occurrence as to pass virtually without notice unless those in attendance feel that some injury has resulted to a child by virtue of such an incident. The record convinces us, as it undoubtedly did the trial court, that the defendants exercise every care toward their charges and take precaution to prevent injury.
In his brief learned counsel for plaintiff admits that he has been unable to find any case enunciating the degree of care owed by persons operating a nursery in which children of tender age are cared for for a fee. Esteemed counsel for plaintiff, however, cites numerous cases involving the obligations of a public carrier to its fare paying passengers and contends that the jurisprudence in such cases are analogous and applicable to the case at bar. We thoroughly agree with the rule of law set forth in the various cases dealing with the obligations of the public carrier toward its fare paying passengers but point out that the law in this regard is that the carrier, while owing the highest degree of care, is not the insurer of its patrons.
In its written reasons for judgment the trial court cited and relied upon Bergeron v. Houston American Insurance Company, La.App., 98 So.2d 723. In the cited case the court held that an accident to a child toddling about the floor was a foreseeable consequence of the defendant's actions in throwing and flinging his arms about while playing with another child and that injury to the child on the floor was avoidable had defendant exercised proper care under the circumstances.
Able counsel for plaintiff in his brief cites and relies upon the case of Lynch v. Fisher, La.App., 34 So.2d 513. This case is inapposite to the instant case on its facts inasmuch as the Lynch case involves an automobile accident and resulting injuries to plaintiff is the result of an unforeseeable act of a third party. In the Lynch case, supra, the court had to consider whether injury to the plaintiff was foreseeable as the result of the alleged negligence of the defendant.
In substance, the cases cited by plaintiff are authority for the proposition that to create liability there must be negligence on the part of defendant producing injury that is reasonably foreseeable as a consequence of such negligence.
Plaintiff further cites in his brief the cases of Jackson v. Jones, 224 La. 403, 69 So.2d 729, and O'Bier v. Manufacturers Casualty Company et al., La.App., 70 So.2d 220. Our reading of these cases discloses that they deal with the attractive nuisance doctrine. In the case at bar there is no evidence whatsoever that the rockaway upon which Randy Oldham was injured constitutes a dangerous instrumentality and is, therefore subject to classification as an attractive nuisance. We have hereinabove described the rockaway in detail and conclude without hesitation that an instrument *423 so designed and constructed does not constitute an attractive nuisance.
It is our opinion that the substantial question presented herein is whether or not appellant has carried the burden incumbent upon him of proving negligence of the defendants from which injury to the child might reasonably have been foreseen. Although defendants are to be held to the highest degree of care, they may not be held liable in damages in the absence of some negligence constituting a proximate cause of the child's injury.
Upon the factual situation presented we believe the learned trial court properly held defendant free of negligence. His finding of fact in this regard is entitled to great weight and will not be reversed unless found manifestly erroneous. From the record in the present case, we not only fail to find manifest error in its decision, but readily concur therewith. Under such circumstances his determination is entitled to affirmance. Norman v. State, 227 La. 904, 80 So.2d 858, Lebo v. Metropolitan Casualty Company of New York, La.App., 99 So.2d 417.
Affirmed.